UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALLEN YELLE,   Plaintiff | )<br>)<br>) |
| v. | ) C.A. No. 09-cv-30152-MAP<br>) |
| UNITED WATER SPRINGFIELD LLC,   Defendant | )<br>) |

MEMORANDUM AND ORDER REGARDING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(Dkt. No. 32)

July 7, 2011

PONSOR, D.J.

I. INTRODUCTION

In September 2009, Plaintiff Allen Yelle filed a complaint against his former employer, Defendant United Water Springfield LLC, alleging two counts of breach of contract (Counts I and II); three violations of the Employee Retirement Income Security Act ("ERISA") (Counts III, IV, and V); and failure to pay compensation (Count VI). (Dkt. No. 44, Second Am. Compl. ¶¶ 19-43.) The parties engaged in settlement discussions throughout much of 2010. Upon their breakdown, Defendant filed this motion for summary judgment. (Dkt. No. 32.) For the reasons stated below, Defendant's motion will be denied in part and allowed in part.

## II. FACTS

In 1974, Plaintiff began work as a municipal employee with the Springfield Water and Sewer Commission ("SWSC"). Throughout his career, Plaintiff worked for the SWSC at the Bondi's Island Facility near Springfield. On October 1, 2000, Defendant, a national company that performs water and wastewater management services for municipal clients, took over the management of the Bondi's Island Facility pursuant to a Service Contract for Wastewater Treatment System Capital Improvements and Asset Management ("Service Contract"). Thus, beginning on October 1, 2000, Plaintiff was no longer a municipal employee and instead was employed by Defendant. At the time, Plaintiff held a union position as a foreman in the maintenance department of the water and sewer treatment plant.

Two provisions of the Service Contract between SWSC and Defendant are at issue in this case. First, the Service Contract provided that Defendant could not dismiss an employee without "just cause." (Dkt. No. 40, Ex. 4.) Second, it required Defendant to offer to its new employees, including Plaintiff:

> pension benefits, the value of which, taken together with the value of pension benefits accrued by the Designated Employee from his or her service to [SWSC] through the Commencement Date, is reasonably projected <u>to equal or exceed</u> the value of the pension benefits the Designated

2

> Employee would receive were the Designated
> Employee to remain in the employ of [SWSC] through
> the date upon which the Designated Employee
> retires from service to the Company.

(Dkt. No. 33, Ex. 10 (emphasis added).)

Although Defendant had agreed prior to signing the contract to establish a defined benefit plan for bargaining-unit employees, in October, 2000, Defendant offered only a retirement savings 401(k) plan. However, on January 1, 2001, the Springfield Water, LLC Defined Benefit Pension Plan ("Pension Plan") became effective for bargaining-unit employees. As a result, while non-bargaining-unit employees could only participate in the 401(k) plan, bargaining-unit employees, pursuant to the terms of the Service Contract, were given the option to elect one of Defendant's two retirement plans, either the 401(k) plan or the Pension Plan. (Dkt. No. 33, Ex. 11.)

On December 6, 2000, Defendant offered Plaintiff a promotion to Maintenance Manager, a non-bargaining-unit position. The offer letter, which Plaintiff signed as evidence of his acceptance of its terms and conditions, stated in relevant part:

> Since you are a continuing Springfield Water &
> Sewer Commission employee, US Water will honor all
> the rights and privileges offered to other
> transferring employees including . . . the same
> medical and retirement benefits guaranteed to
> transferring Commission employees by US Water.

3

(Dkt. No. 4, Ex. 2.)

From December 2000 until the date of his termination on June 5, 2006, Plaintiff was encouraged by various members of Defendant's management team to enroll in the 401(k) plan. Although Plaintiff was aware that if he did not enroll in the 401(k) plan he could not receive retirement benefits, he did not enroll in it because he "was not certain that it would provide the benefits promised under his employment contract," which Plaintiff understood to be a "pension which equaled or exceeded the retirement benefits of the City of Springfield retirement plan." (Dkt. No. 40, Pl. Resp. to Def. SOF, ¶¶ 27, 28, 43.)[1]

On March 31, 2003, Defendant's Human Resources Director, Laureen Lach, sent an email to Defendant's General Manager of Operations, Mark Horberg, in which she suggested a means by which Defendant could provide Plaintiff with an equivalent benefits package: "because he was not eligible to participate in the [Pension Plan] since he is management . . . we would need to adjust his salary to allow him the opportunity to contribute enough money to the 401k to keep him whole." (Dkt. No. 40, Ex. 13.) On August 8, 2003, Ms.

---

[1] Plaintiff has never argued that he should have been permitted to enroll in the Pension Plan, which, he concedes, was only available to bargaining-unit employees. (Dkt. No. 40, Pl. Resp. to Def. SOF, ¶ 13.)

Lach sent another email to Mr. Horberg, stating that she had calculated the "gross up for 401k make up contributions" to be $29,710, or a 3.38% gross increase in Plaintiff's salary. (Dkt. No. 40, Ex. 15.) Following this exchange, Mr. Horberg offered Plaintiff "a 3.38% gross up on your salary for participation in the 401K plan." (Dkt. No. 33, Ex. 14.) He further stated, "You are eligible only if you participate in the plan. You are encouraged to participate." (Id.) Plaintiff declined the offer.

Several months later, in January 2004, Mr. Horberg offered Plaintiff a lump-sum cash payment of $14,833.52 if he enrolled in the 401(k) plan, which, Mr. Horberg explained, represented the amount Defendant would have contributed to the plan from October 2000 through December 2003. (Dkt. No. 33, Ex. 15.) Plaintiff again declined. On May 3, 2004, Mr. Horberg reiterated the offer of a lump-sum payment, to which Plaintiff responded, "Please explain my current enrollment in the 401K program." (Dkt. No. 33, Ex. 20; Dkt. No. 40, Pl. Resp. to Def. SOF, ¶ 47.) Mr. Horberg answered, "You are not now, nor have you ever been enrolled in the company's 401k plan." (Dkt. No. 33, Ex. 19.)

In late spring of 2005, after warning Plaintiff that his performance as Maintenance Manager was unsatisfactory, Defendant offered him a newly created position of

Maintenance Planner/Scheduler, which carried equivalent pay but which Plaintiff viewed as a demotion. The May 2 offer letter provided that Plaintiff's "benefits will be as prescribe[d] by United Water policy. This is to ensure appropriate tracking of your benefits and consistency with other company managers." (Dkt. No. 40, Ex. 9.)

On May 18, 2005, having received no response from Plaintiff regarding the offer, Defendant's Regional Manager Ken Maltese sent Plaintiff a letter, advising him that if he failed to accept the offer, Defendant would "initiate performance standard criteria per your existing job." (Dkt. No. 33, Ex. 21.) Mr. Maltese continued, "[y]ou will also forfeit any claim against past 401(k) contributions since it is clear that your failure to participate in the program is the sole reason for your failure to benefit from the plan." (Id.)

Two days later, Plaintiff responded by mail that his legal counsel had advised him not to agree to the lump-sum 401(k) contribution because his "rights concerning benefits and retirement . . . are protected by my initial offer letter" and by the Service Contract. (Dkt. No. 33, Ex. 22.) Plaintiff further stated that he had recently been given a raise and thus disputed the reasons behind Defendant's transfer of him to a new position, contending that his

recent "poor performance evaluation" was connected to his refusal to accept Defendant's lump-sum 401(k) offer. (Id.) On May 25, 2005, after further discussions with Defendant, Plaintiff accepted the position of Maintenance Planner/Scheduler but did not agree to the portions of the offer dealing with benefits.

On October 6, 2005, Ms. Lach sent Plaintiff a letter, stating, "[t]he Company agrees that you are entitled to retirement benefits that are 'equal to or exceed' what you would have received as a municipal employee." (Dkt. No. 33, Ex. 27.) She explained that an actuary calculated the benefits Plaintiff would have received were he enrolled in the Pension Plan "and then calculate[d] the Company contribution to the 401k plan to give you a retirement benefit of equal value (assuming that you contribute up to 5% of your wages to the 401k plan)." (Id.) The actuary's calculation showed the difference as $10,107.88. Based on this new figure, Ms. Lach withdrew Defendant's initial lump-sum offer of $14,833.52 and offered the smaller amount. Also based on the actuary's calculations, Defendant offered to pay a salary "gross up" of 18.81% from October 1, 2005, through Plaintiff's retirement. (Id.)

On November 4, 2005, Plaintiff's attorney, Craig Robinson, responded to Defendant, contesting the actuary's

calculations on the grounds that they were based on two flawed assumptions: (1) that Plaintiff would not retire until he reached age sixty-five; and (2) that the interest rate from the date that Defendant became Plaintiff's employer until his retirement would be 6.5%.  (Dkt. No. 33, Ex. 28.)  Mr. Robinson noted that Plaintiff was willing to consider a 401(k) plan funded by Defendant as an alternative but that it had to be funded so as to enable him to retire at any time before turning sixty-five with benefits that would "equal or exceed" those he would have received had he remained a municipal employee.  (Id.)  Defendant never responded to this letter.

On February 24, 2006, Plaintiff received a Performance and Development Review and was given a rating of "significantly below objective."  (Dkt. No. 33, Ex. 29.) He was placed on a ninety-day performance improvement plan, throughout which his manager rated his performance as "semi-satisfactory."  (Dkt. No. 40, Pl. Resp. to Def. SOF, ¶ 77.) On June 5, 2006, Plaintiff's employment was terminated "for poor work performance."  (Dkt. No. 33, Ex. 31.)

On June 16, 2006, Ms. Lach sent Plaintiff a letter offering him a lump-sum payment of $71,500.44, representing the actuary's calculation of what the employer's matching contributions from October 1, 2000, through Plaintiff's

termination date would have been had Plaintiff participated in the 401(k) plan. (Dkt. No. 33, Ex. 32.) The letter stated, "[t]he calculation compares the retirement benefit you would have received had you stayed in the government pension plan and then calculates the Company contribution to the 401k plan to give you a retirement benefit of equal value." Ms. Lach concluded by requesting Plaintiff to "let me know if you wish to accept the above-described benefit." (Id.)

On July 28, 2006, Plaintiff's attorney, Mr. Robinson, contacted Ms. Lach to contest Plaintiff's termination, contending that it was without "just cause" and, thus, violated the Service Contract to which Plaintiff, Mr. Robinson argued, was a third-party beneficiary. (Dkt. No. 40, Ex. 37.) Mr. Robinson threatened legal action should Defendant refuse to reinstate Plaintiff. (Id.) Mr. Robinson also requested a response to his letter of November 2005 regarding Plaintiff's benefits. About one year later, with the situation still unresolved, Mr. Robinson died.

### III. DISCUSSION

A. Legal Standard.

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P.

56. The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The burden then shifts to the opposing party who must demonstrate that a reasonable jury could return a verdict in its favor based on the evidence.  Id.  "A party opposing summary judgment must present definite, competent evidence to rebut the motion."  Torres v. E.I. Dupont De Nemours & Co., 219 F.3d 13, 18 (1st Cir. 2000) (citations omitted).

B.  **Threshold Issues**.

   1.  **Which Law Governs?**

Three of Plaintiff's six counts allege violations of ERISA.  At the hearing on this motion, Plaintiff acknowledged that the heart of this case is the breach of contract claim and that the ERISA allegations were filed only as alternative claims.  Despite arguing vigorously for application of ERISA in its memorandum, Defendant essentially agreed at the hearing that the case sounded in contract.  For clarity's sake, the court will briefly address why the case should proceed under common law and not ERISA.

ERISA preempts common law "when a court must evaluate or interpret the terms of the ERISA-regulated plan to determine liability under the state law cause of action."

Hampers v. W.R. Grace & Co., 202 F.3d 44, 52 (1st Cir. 2000). Here, no such evaluation or interpretation is necessary. The connection between Plaintiff's claims and the ERISA-regulated benefits plans (i.e., the 401(k) plan and the Pension Plan) is the December 2000 offer letter, which appears to promise Plaintiff, a non-bargaining-unit employee, bargaining-unit benefits, or the equivalent thereof, for which he was not actually eligible. The issues requiring resolution do not concern Plaintiff's eligibility for an ERISA plan or his rights pursuant to an ERISA plan but rather his rights pursuant to a contract, namely the offer letter.

The parties are clearly correct that this is a contract case that concerns interpretation and application of Defendant's December 2000 offer letter to Plaintiff. Accordingly, the court will allow Defendant's motion for summary judgment on all of Plaintiff's ERISA counts, Counts III, IV, and V.

2. Third Party Beneficiary.

The court will also summarily dispose of Count II, which alleges breach of the Service Contract to which Plaintiff contends he is a third-party beneficiary. Plaintiff's argument is entirely foreclosed by the following express provision:

> No Third Party Rights. This Service Contract is
> exclusively for the benefit of the Commission and
> the Company and shall not provide any third parties
> with any remedy, claim, liability, reimbursement,
> cause of action or other rights.

(Dkt. No. 33, Ex. 9, Hjelm Dec. ¶ 9.)

Remaining for discussion are Counts I and VI.

C.  Count I: Breach of Contract.

Plaintiff's claims arise from his allegation that Defendant failed to "honor all the rights and privileges offered to other transferring employees including . . . the same medical and retirement benefits guaranteed to transferring Commission employees by US Water," as promised in the December 6, 2000, offer letter. (Dkt. No. 4, Ex. 2.) Plaintiff contends that Defendant both fired him without "just cause" and failed to award him equivalent benefits as promised in the letter.

1.  Statute of Limitations.

Invoking Massachusetts' six-year statute of limitations for contract claims, see Mass. Gen. Laws, ch. 260, § 2, Defendant contends that Plaintiff's contract claim is time-barred. The argument is unpersuasive.

A "cause of action for breach of contract generally accrues at the time of breach." Whitcomb v. Pension Dev. Co., 80 F.2d 167, 170 (1st Cir. 1983). Under the "discovery rule," the cause of action accrues when the plaintiff

"learned or reasonably should have learned of the factual basis for [his] claims." Compagnie De Reassurance D'Ile De Fr. v. New Eng. Reinsurance Corp., 57 F.3d 56, 88 (1st Cir. 1995). It is true, as Defendant points out, that Plaintiff acknowledged that he was aware of the circumstances underlying his breach of contract claim as early as July 2003. Nevertheless, the evidence suggests that Plaintiff reasonably believed, at least through November 2005, when his attorney sent a letter to Defendant contesting the actuary's calculations and requesting more information, that negotiations were ongoing and that no breach had yet occurred or even would occur. Having so concluded, the court need not pin down an exact date on which Plaintiff can be charged with having notice of Defendant's breach. It is sufficient that Plaintiff filed his first complaint on September 15, 2009, well within six years of November 2005. Thus, Plaintiff's contract claim is not time-barred.

    2.   "Just Cause".

Plaintiff's first complaint and first amended complaint did not include claims related to his termination. (Dkt. Nos. 1 & 4.) Defendant filed its motion for summary judgment based on the claims alleged in the first amended complaint and, thus, did not address what at that time was a non-issue. In Plaintiff's opposition to the motion,

however, he argued extensively that he was fired without "just cause." In its reply brief, Defendant responded to this argument by noting that Plaintiff's complaint alleged no cause of action concerning his termination, and recommended that the court disregard Plaintiff's argument. The court was prepared to follow this advice and, moreover, to deny Plaintiff's motion to file a second amended complaint, which included an explicit claim of termination without "just cause" and which appeared on the docket just hours before the hearing on Defendant's motion for summary judgment. At argument, however, Defendant raised no objection to Plaintiff's motion to file the amended complaint, and the court subsequently allowed it as unopposed.

Having conducted its own review of the record, the court has found sufficient evidence supporting Plaintiff's claim of unjust termination such that a reasonable jury could decide in his favor. This evidence includes Plaintiff's affidavit attesting to Defendant's failure to provide him with the necessary equipment to successfully perform his job, (Dkt. No. 40, Ex. 8, Yelle Aff. ¶¶ 2-7), as well as the absence of any performance reviews, positive or negative, prior to Plaintiff's reassignment to Maintenance Planner/Scheduler. The court will thus deny Defendant's

motion for summary judgment on Plaintiff's claim related to his termination. The court recognizes, however, that Plaintiff is not seeking reinstatement. Rather, success on this portion of his claim would increase the benefits owed to him because his last day of work presumably would have been later than June 5, 2006.

   3.   <u>Damages</u>.

Defendant has never strayed from its position that its promise to Plaintiff of "the same medical and retirement benefits guaranteed to transferring Commission employees by US Water," is a promise of retirement benefits that would "equal or exceed" the value of the benefits he would have received had he remained an employee of SWSC. As Ms. Lach testified, beginning in 2001, "the company believed it was obligated to make up for" the shortfall between "Mr. Yelle's 401(k) plan value as compared to Mr. Yelle's former city plan." (Dkt. No. 40, Ex. 3, Lach Dep. 206:24-207:10.)

The contested issue here is the value of those benefits. Each party has submitted an actuarial report. Plaintiff's actuary found that Plaintiff is entitled to approximately $204,317.00. (<u>Id.</u> at 3.) Defendant, for its part, maintains that its original offer upon Plaintiff's termination of $71,500.44 is the proper figure. (Dkt. No. 33, Ex. 32.) There is likely no fact more material to this

case -- or, for that matter, more in dispute -- than how much Defendant owes Plaintiff. For this reason, and for the reasons stated above pertaining to Plaintiff's termination, the court will deny Defendant's motion for summary judgment on Count I.

D.  Count VI: Failure to Pay Compensation.

Plaintiff's final count alleges that Defendant failed to compensate him for his last pay period and his accrued vacation and sick time. Plaintiff has presented no opposition, nor can the court conceive of one, to Defendant's argument that his claim is time-barred pursuant to Mass. Gen. Laws ch. 149, § 150, which provides that an employee's exclusive remedy for alleged failure to pay wages is to file a complaint with the Attorney General's office within three years of the alleged violation. Given that Plaintiff filed no such complaint within the allotted time period, the court will allow Defendant's motion for summary judgment on Count VI.

IV.  CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (Dkt. No. 32) is hereby DENIED as to Count I and is hereby ALLOWED as to Counts II, III, IV, V, and VI. The clerk will set the matter for a final pretrial

conference.

It is So Ordered.

                                            <u>/s/ Michael A. Ponsor</u>
                                            MICHAEL A. PONSOR
                                            U. S. District Judge